UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 25-cr-20460
Honorable Linda V. Parker

PHILLIP JACKSON JR.,

Defendant.
______________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR FRANKS HEARING (ECF No. 17)**

Based on evidence retrieved from a GPS tracker and a residential search warrant for two locations, a federal indictment was returned charging Defendant Phillip Jackson, Jr. ("Jackson, Jr.") with possession of controlled substances with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(c), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Jackson, Jr. filed the subject motion which has been fully briefed by the parties. The Court held a hearing on the motion on May 20, 2026.

## Background

In November 2024, the Southfield Police Department began investigating a blue Ford Taurus after it was observed making visits to hotels in Southfield. In May 2025, Detective Dylan Hayes from the Southfield Police Department applied

for and received two warrants from the Honorable Melissa King of the 46th District Court. The warrants authorized (1) placement of a GPS tracker on a blue Ford Taurus, (2) a search of Jackson Jr.'s residence at St Mary's Street in Detroit, and (3) a search of an address on Commons Drive in Southfield.

In the affidavit supporting the warrant application for the GPS tracker, Detective Hayes attested to the following facts:

- The property described has been and will likely continue to be involved in violations of the criminal laws of Michigan.
- Southfield Police Department has been investigating the driver of the blue Taurus for the past few months on suspicion of distributing/selling narcotics. Sgt. Majewski of Southfield Police saw the driver on numerous occasions and identified him as Philip Jackson Jr by comparing his SOS photo in LEIN to him.
- Jackson Jr registers to the same address as the registered owner of the Ford Taurus.
- A criminal history check revealed that Jackson Jr was arrested by Westland PD on January 18, 2024.
- On May 3, 2025, Sgt Majewski while on patrol observed the blue Taurus located at the EZ Rest on Telegraph Road in Southfield. Per surveillance footage from the EZ Rest, the Taurus pulls into the parking lot at

approximately 1204 hours and goes to the back of the complex. The driver does not park in a parking spot, just sits at the back of the complex and stays inside the vehicle. Approximately 1-2 minutes later, an unknown white male exits a second-floor room and goes to the Taurus and enters the front passenger seat of the vehicle. The affidavit further states that the passenger is moving his hands and arms in the vehicle a lot. Approximately 2 minutes later, the unknown white male exits the vehicle and returns to the room he left from. The Taurus leaves right after the unknown male exits the vehicle. Sgt. Majewski advised he observed Jackson Jr to be the driver of the vehicle.

- On May 9, 2025, Southfield Tactical Crime Suppression Unit (TCSU) was conducting surveillance on the Taurus. During this surveillance, Jackson Jr was identified as the driver. TCSU followed the vehicle to the Red Oak Inn located at Northwestern Service Drive in Southfield. While at this location Jackson Jr parked on the east side of the building but stayed in the vehicle. TCSU Officers observed an unknown subject go up to the passenger window of the Taurus and reach in. The unknown person walked away a few seconds later and returned to a third-floor room. Jackson Jr then left the Red Oak Inn. His total time at the Red Oak Inn was approximately 45 seconds.
- Based on officer training and experience, both of the referenced incidents are consistent with hand-to-hand narcotic sales.

- Being able to track the location of the Taurus will assist in the investigation of selling/distributing narcotics.
- Due to the sensitive nature of the investigation and to prevent detection of the tracking device and law enforcement scrutiny, it may be necessary to install, remove and maintain the tracking device in the nighttime.
- The tracking device produces signals from inside private buildings, garages, and other structures or locations not open to the public or visual surveillance and said signals can be monitored by police from a remote site.
- The installation of the GPS tracker is requested for a period of 60 days (GPS Tracker Warrant ECF No. 17-1).

The search warrant for the tracking device was approved on May 9, 2025, authorizing 60 days of continuous monitoring. On June 3, 2025, Southfield Police sought and obtained a residential search warrant ("RSW") for the search of 2 residences. In a 7-page affidavit, Detective Hayes included the same information concerning the Southfield Police Department's investigation of the blue Taurus since November 2024, Jackson Jr's criminal history, and the two suspected drug sales that were witnessed. Jackson Jr.'s criminal history has been expanded in the RSW to include 5 drug offenses spanning 2012-2024. Further, in the RSW, it is referenced that Sgt Majewski "observed the vehicle make frequent visits to high

crime hotels in Southfield known for prostitution and narcotics." The latter description was not included in the warrant for the tracker device.

The affidavit for the RSW attests to observations of Jackson Jr. coming and going from Target Location 1 on Commons Drive in Southfield and Target Location 2, a residence on St. Mary's Street. Notably, the affidavit states that these observations are based upon the review of the GPS tracking history of Jackson Jr's Taurus.

The RSW also referenced observations of Jackson Jr standing in the front door of Target 2 wearing blue latex gloves, retrieving mail, going to the Taurus, and removing an unknown item from what appeared to be a pocket of his clothing and placing it inside the car. Another observation based on officer surveillance of Target Location 2 was that of an unknown black male exiting the location and walking up to a white Jeep that had just pulled into the driveway. The individual was seen handing the driver of the Jeep an unknown item. The affidavit attests that based on officer experience and training, these observations were consistent with hand-to-hand narcotics sale, noting the relatively quickness in nature and the involved exchange of narcotics for money. (ECF No. 22-2.)

## Legal Standards

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.

To establish probable cause, officers must establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 U.S. 213, 238 (1983). In other words, there must be a "nexus "between the place to be searched and the things to be seized. *United States v Reed*, 993 F.3d 441, 447 (6th Cir. 2021).

In evaluating the adequacy of an affidavit in support of a warrant, the Court is limited to the four corners of the warrant; information known to an officer but not conveyed to the judge before whom the warrant is presented is deemed irrelevant. *United States v Brooks*, 594 F. 3d 488,492 (6th Cir. 2010). Case law instructs that a magistrate judge's probable cause determination is to be afforded "great deference" and should be reversed only if the issuing judge arbitrarily exercised her discretion. *Gates*, 462 U.S. at 236; *see also United States v Baker*, 976 F.3d 636,646 (6th Cir. 2020).

## A. The GPS Warrant

### 1. The GPS Tracking Device

The use of a tracking device to monitor the movement of a vehicle is considered a search under the Fourth Amendment and, as such, must be authorized by a search warrant. *United States v. Jones*, 565 U.S.400, 404 (2012). Case law

dictates that a warrant for a tracking device may be issued "if a supporting affidavit establishes probable cause to believe that the device will uncover evidence, fruits, or instrumentalities of a crime." *United States v. Coleman*, 923 F.3d 450, 454 (6th Cir. 2019). In the instant matter, the inquiry is not whether probable cause exists to believe that evidence of a crime will be found inside of the vehicle, but rather whether there is a fair probability that information gathered from the tracking device will reveal evidence of criminal behavior. *United States v. Petitfrere*, No. 22-00037, 2022 WL 2134590, at *4 (E.D. Ky. June 14, 2022); *United States v. Harden*, No.20-20280, 2021WL 5506439, at *3 (E.D. Mich. Nov. 24, 2021).

Jackson, Jr. argues that the warrant for the GPS tracker is deficient because it consists of wholly conclusory statements. Specifically, Jackson Jr. asserts that the affiant provides no facts showing exchange of money, observable drugs, statements by participants or subsequent drug related behavior. Without such, Jackson Jr argues, the affidavit consists of only bare conclusions based on officer "training and experience" without factual predicates.

Jackson, Jr., citing *Carpenter v. United States*, 585 U.S. 296 (2018), challenges the duration of the GPS tracking device, which in this instance was 60 days. While the Supreme Court raised concern for the device at issue in *Carpenter*, which was 127 days, it did not set a universal seven-day threshold for

all cases. This Court is not aware of any case law setting a threshold for the use of a tracking device nor was any cited.

The Court turns to the affidavit to determine whether there was an entire failure to connect evidence of wrongdoing (drug sales) to a fair probability that information gathered from the tracking device will reveal evidence of criminal behavior. Here, we begin with, what the Government argues, is six months of surveillance of the blue Taurus by the Southfield Police based upon suspicion of distributing/selling drugs. Sgt. Majewski identified Jackson Jr as the driver of the Taurus and identified him based upon an SOS photo. The Government further argues that a look into Jackson Jr.'s criminal history revealed an arrest for selling and manufacturing heroin.

The two instances referenced describe two brief encounters (one for 2 minutes and the other for 45 seconds) without the driver parking the Taurus or exiting the vehicle. Hand motions were observed in one instance, and the other involved an individual approaching the window on the driver's side and reaching in.

Further, while the Government acknowledges that the Taurus was registered in another person's name, it was determined prior to seeking the warrant that Jackson Jr registers to the same address as the registered owner of the vehicle, which notably is not Jackson, Jr.

It is true that there was no observation of money or drugs being exchanged. However, Sixth Circuit case law instructs that, in deciding whether probable cause was present to justify the issuance of a warrant, courts "do not scrutinize a warrant affidavit in a 'hypertechnical' or 'line-by-line' manner." *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (quoting *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019)). Rather, the proper approach is a holistic one in which courts consider the totality of the circumstances. *Id.* Looking at the totality of the information that was presented to the magistrate judge in support of the warrant, the Court concludes that there was not an entire failure to connect this evidence to a fair probability that information gathered from the tracking device will reveal evidence of criminal behavior. The existence of probable cause for the issuance of the tracking device certainly could have been strengthened by additional observations. However, surveillance of the Taurus since November of 2024, and the observations of activity consistent with a short stay drug sale, involving what appeared to be a hand-to-hand transaction, supports a fair probability that a tracking device would reveal evidence of criminal behavior.

**Good Faith Exception**

In its transformative ruling in *United States v. Leon*, the Supreme Court held that suppression is not an available remedy when officers conduct a search in good-faith reliance on a judicially authorized warrant. 468 U.S. 897, 909,922

(1984). Accordingly, under the "good faith" exception, the exclusionary rule does not prohibit the use of evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant. *Id*. at 922. The underlying rationale of the exclusionary rule is to deter the misconduct of police officers, not judges—so nothing is gained by punishing officers acting in reasonable reliance on the issuing judge's decision. *United States v. Davis*, 84 F.4th 672, 679-80 (6th Cir. 2023).

While the Court has found that the affidavit in support of the warrant for the tracking device provided probable cause, even if this Court erred in its finding, the good-faith exception in *Leon* operates to save the approval of the tracking device. There is no evidence that the Southfield officers acted without an objectively reasonable good-faith belief that their conduct was lawful. *Leon*, 468 U.S. at 923.

Moreover, just because a search warrant affidavit lacks probable cause does not mean that it is bare bones. *United States v White*, 874 F.3d 490, 497 (6th Cir. 2017). To avoid the bare-bones designation, the search warrant affidavit must establish a "minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Brown,* 828 F.3d 375, 385 (6th Cir. 2016). The search warrant affidavit for the tracking device in this case is not bare bones. It provides a connection between the two observed incidents set forth in the affidavit and the fair probability that the tracking device would reveal criminal activity. So, even if the affidavit failed to establish probable cause of the tracking device, as

argued by Jackson, Jr., the officers executing the warrant to obtain the device acted in good faith when they relied on it.

**2. Residential Search Warrant**

The parties requested the opportunity to brief the Court on whether the evidence from the GPS tracker prompted the Residential Search Warrant. (ECF Nos 30 and 34).

Jackson Jr argues that because the warrant for the GPS tracking device lacked probable cause, and the evidence from the tracker in fact prompted the application for the RSW, evidence obtained from the residential locations should be deemed fruits of the poisonous tree and, as such, be suppressed.

This argument is deemed moot given that the Court has determined that the warrant for the GPS tracking device sufficiently provided probable cause. As such, there is no poisonous tree. Further, the Court has made an additional finding that the good-faith exception operated to confirm the approval of the tracking device.

Nonetheless, after reviewing the briefs and the affidavit in support of the RSW, the Court concludes that the data obtained from the tracking device led, in significant part, to the request for issuance of the RSW. Indeed, the affidavit in support of the RSW relies upon the information obtained from the tracking device. Paragraph K of the affidavit specifically references that "[r]eviewing the GPS

tracking history for Jackson Jr's Ford Taurus, Jackson Jr. had two high trafficked addresses: Target Location 1 and Target Location 2. Further review of this GPS tracking history shows Jackson Jr's vehicle makes numerous short stops at Target Location 2, most of which are twenty minutes or less, multiple times a day over the course of multiple days."

Moreover, there is sufficient evidence that law enforcement would have sought to search the two residences without the information from the GPS tracker. As noted, in both affidavits, Southfield Police Officers had been investigating Jackson Jr. since November 2024. As argued by the Government, by the time the application for the RSW was submitted on June 3, 2025, Southfield officers had surveilled Jackson Jr. multiple times and observed, based on the brevity of the transactions and Jackson's criminal history, what it thought to be hand-to-hand narcotics transactions. Further, as stated in the affidavit, officers also observed two individuals meet with Jackson Jr. in a suspected hand-to-hand transaction, who admitted they had previously bought narcotics from Jackson Jr. Based on these observations, the Government argues, and the Court agrees, that Jackson Jr. was a target, and from a law enforcement perspective, the next step in the investigation was to locate where Jackson Jr. maintained his narcotics.

For these reasons, and because the Court has determined that the GPS tracking device was issued based on probable cause, the Court finds that the issuance of the RSW provided sufficient probable cause.

**Franks Hearing**

Jackson Jr. requests a Franks Hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, he argues that the affidavit for the tracking device omitted that (1) the Taurus was registered to another person; (2) multiple individuals accessed both searched properties; (3) no controlled purchases were ever attempted; and (4) no contraband was ever observed. Jackson Jr argues that these omissions are deemed material under *Franks* because had these facts been included, probable cause would have been vitiated. With these omissions corrected through inclusion, Jackson Jr. argues, it would be revealed that the affidavit was comprised of speculation based on brief and ambiguous observations.

Jackson Jr. also argues that the affidavit falsely states officers identified him through surveillance instead of by comparing him to a Secretary of State photograph.

Affidavits supporting warrant applications are generally entitled to a "presumption of validity." *Franks*, 438 U.S. at 171. A defendant can overcome that presumption and impeach the contents of an affidavit at a hearing if he makes

allegations of deliberate falsehood or of reckless disregard for the truth and those allegations are accompanied by an offer of proof. *Id*. at 171-72.

Proving entitlement to a *Franks* hearing is a heavy lift. A defendant must make a "substantial preliminary showing" that an affiant included a false statement intentionally, knowingly, or with reckless disregard for the truth—and that, without the statement, the remnants of the affidavit could not support a finding of probable cause. *Id*.; *United States v. Bateman,* 945 F. 3d 997, 1008 (6th Cir. 2019).

First, the Court has reviewed the affidavit for the tracking device and finds that it explicitly states that Jackson Jr was identified by comparison to an SOS photograph. At paragraph 4a of the Affidavit, it is stated that "Sgt Majewski has seen the driver on numerous occasions and identified him as Phillip Jackson Jr. by comparing his SOS photo in LEIN to him." Second, contrary to Jackson Jr's assertion that the affidavit omitted the fact that the Taurus was registered to another person, the affidavit specifically states that "Jackson Jr. registers to the same address as the *registered owner* of the Ford Taurus." (emphasis added). This is a statement reflecting that the registered owner of the Taurus is not Jackson Jr.

Regarding the three remaining alleged omissions, the Court finds that failure to include them is neither a material omission nor an intentional misrepresentation. As noted above, the Court acknowledged in its finding of probable cause that such a finding would have been strengthened had there been observations of drugs or

purchases for money. However, Jackson Jr. has not made the requisite substantial preliminary showing required under *Franks t*o show that the omission of these facts is attributable to an intentional misrepresentation on the part of the officers. Moreover, there is no prejudice to such an omission given the Court's consideration of such facts. Finally, factual omission of individuals being able to access both searched properties does not leave the application for the tracking device without probable cause.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress and Request for Franks Hearing (ECF No. 17) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 14, 2026